UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

KEYBANK NATIONAL ASSOCIATION

VERSUS

PERKINS ROWE ASSOCIATES, LLC et al.

CIVIL ACTION

NO. 09-497-JJB

**RULING ON DEFENDANTS' MOTION TO DISMISS**

Defendants, Perkins Rowe Associates, LLC, Perkins Rowe Associates II, LLC, Perkins Rowe Block A Condominiums, LLC, and Joseph T. Spinosa, (collectively "Perkins Rowe") bring this motion to dismiss (doc. 38) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7). Plaintiff, KeyBank National Association ("KeyBank"), filed an opposition. (Doc. 155.) Perkins Rowe filed a reply. (Doc. 47.) The Court heard oral arguments on November 12, 2009. After careful review of the aforementioned documents and the arguments presented in court, the Court DENIES Perkins Rowe's motion for the reasons discussed herein.

**Background**

KeyBank entered into a $170 million loan agreement ("Loan Agreement")[1] with Perkins Rowe, in July 2006. In addition to the Loan Agreement, Perkins Rowe signed a mortgage and a promissory note in KeyBank's favor for the full

---

[1] Counsel for both Perkins Rowe and KeyBank refer to the Amended and Restated Construction Loan Agreement. Therefore, all references to the Loan Agreement relate to this document.

1

$170 million.  Individual defendant, Joseph T. Spinosa, also executed a guaranty of payment on the loan.  The Loan Agreement expressly contemplated that KeyBank would subsequently sell and assign portions of the loan to other lenders.  However, the Loan Agreement also provided that KeyBank would act as agent for the other lenders while keeping a dominant percentage of the loan amount for itself.  KeyBank then executed assignments secured by promissory notes signed by Perkins Rowe to eight other lenders for the full value of the loan.[2]  After Perkins Rowe failed to make payment on the loan, KeyBank filed suit to collect on the notes, to foreclose on the mortgage, and to enforce the guaranty.

KeyBank alleges diversity jurisdiction under 28 U.S.C. 1332.  Perkins Rowe filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7).  Perkins Rowe does not dispute the citizenship of either KeyBank or Perkins Rowe; however, Perkins Rowe's motion argues that KeyBank is not a real party to the entire controversy and that KeyBank failed to join an indispensible party, the Bank of New Orleans ("BNO"), under Federal Rule of Civil Procedure 19.  According to Perkins Rowe, BNO is one of the real parties to the controversy and as a citizen of Louisiana, BNO destroys the Court's diversity jurisdiction if joined.  Perkins Rowe also

---

[2] Amergy Bank National Association ($27.5 million), Bank of New Orleans ($1 million), Comerica Bank ($17 million), LaSalle Bank ($14 million), National City Bank ($17 million), People's Bank ($17 million), PNC Bank ($14 million), and Guaranty Bank ($27.5 million).  Keybank kept a $35 million interest in the loan.

2

argues that BNO is both a necessary and indispensible party under Rule 19 and thus must be joined, or the claim must be dismissed.

## Law and Argument

### Rule 12(b)(1) - Real Party in Interest

KeyBank, as the party seeking to invoke this Court's jurisdiction, bears the burden of establishing all diversity jurisdictional requirements. *Peoples Nat. Bank v. Office of Comptroller of Currency of U.S.*, 362 F.3d 333, 336 (5th Cir. 2004). In a diversity action, the Court must rest jurisdiction "only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980).

Perkins Rowe argues that KeyBank is only a real party to one $35 million note, and thus does not have an interest in the other notes sufficient to support a right to sue for their collection. Perkins Rowe further contends that BNO's $1 million note makes it one of the real parties to the controversy, and since BNO is not diverse, the Court lacks subject matter jurisdiction.[3] KeyBank counters that it satisfies the real party requirement because it owns an interest in the underlying loan and is the designated agent for all lenders under the terms of the Loan Agreement. KeyBank argues that as long as a party with an interest in the

---

[3] Mem. in Supp. of Defs.' Mot. to Dismiss 4.

3

outcome participates in the litigation, the citizenship of other non-parties who may also have an interest is irrelevant.[4]

In support, Perkins Rowe cites *Associated Insurance Management Corp.* 149 F. 3d 794 (8th Cir. 1998) and *McAuslin v. Grinnel*, 2000 WL 1059850 (E.D. La. 2000).  In *Associated Ins. Mgmt.*, a New York corporation acting under powers of attorney as a collection agent for New York and Arkansas insurance companies sued two Arkansas citizens to reclaim premium payments.  *Id.* at 796.  The court held that when an agent sues on behalf of a real party in interest, the citizenship of the other party must be taken into account.  *Id.* at 797-98.  In *McAuslin*, certain corporate insurers and two Lloyd's underwriters filed a subrogation action seeking recovery of monies paid to an insured party. *McAuslin* , 2000 WL 1059850, at *1.  The court held that the citizenship of all insurance market participants must be considered in the diversity jurisdictional analysis.

Here, however, the Court confronts a different business model from the corporate insurance syndicates discussed in *Associated Insurance Management* and *McAuslin*, albeit one that shares common characteristics.  Insurance syndicates and the Perkins Rowe financing arrangement are both joint ventures in which different actors unite for a common purpose.  But whereas insurance syndicates are essentially groups of underwriters united under enough

---

[4] Pl.'s Resp. in Opp. to Defs.' Mot. to Dismiss 9.

4

organizational structure and economic integration to be treated as a single entity under the law,[5] the loose group of lenders here more closely resembles complex financing arrangements in which non-party lenders do not factor into the diversity jurisdictional analysis. *See Chase Manhattan Bank v. Motorola*, 136 F. Supp. 2d 265 (S.D.N.Y. 2001), and *Transcontinental Oil Corp v. Trenton Products Co.*, 560 F.2d 94 (2d Cir 1977). Both *Chase Manhattan Bank* and *Transcontinental Oil Corp.* are Second Circuit cases; however, in the absence of Fifth Circuit precedent on point, the courts' analysis in both cases is instructive.

In *Chase Manhattan Bank*, the district court denied a motion to dismiss in a similar context as here. Under authority of a set of agreements, Chase brought suit against a borrower to enforce a guarantee on a loan agreement. 136 F. Supp. 2d at 266-67. In addition to establishing Chase's agency, the agreements detailed Chase's significant financial interest in the transaction. *Id.* at 266. The agreements empowered Chase to take actions on behalf of the other lenders but required that Chase deliver to the lenders any amount recovered from an enforcement action proportionate to each lender's share of the loan. *Id.* at 267. The court noted that this "centralized-decision making structure" served the important commercial purpose of minimizing divisive and potentially time-consuming internal skirmishes among the individual lenders in the event that the borrower defaulted. *Id.* at 271. Similarly, in *Transcontinental Oil Corp.*, the

---

[5] *See McCauslin*, 2000 WL 1059850, at *4.

Second Circuit affirmed diversity jurisdiction where the named party brought suit on behalf of eleven non-diverse investors. *Id.* at 103. The court found that in the absence of collusion evidence, the citizenship of the named party governs for diversity jurisdictional purposes where the named party had a real and substantial interest in the litigation and took a lead role in putting together the underlying deal. *Id.*

Both of these cases ascribe to a litigation model whereby one party, the "master of the litigation," asserts the claims on behalf of a disparate group of interest holders. Second Circuit courts adopted this master of the litigation model to facilitate federal jurisdiction in complex commercial banking transactions where, absent any collusive intent, multiple parties vest decision making power in a single entity. *See id.; and Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003). The master of the litigation model simplifies claims and streamlines litigation by lessening the risk of protracted, fractious proceedings. *See Chase Manhattan Bank*, 136 F. Supp. 2d at 271. Although the Fifth Circuit has not expressly adopted the master of the litigation model, it has not rejected it. Accordingly, the Court applies the master of the litigation model.

The Loan Agreement establishes KeyBank's agency relationship to the other lenders as well as KeyBank's ownership interest in the loans.[6] The Loan Agreement also authorizes KeyBank to pursue default remedies on behalf of all

---

[6] Loan Agreement ¶¶ 25.1 , 25.21.

other lenders while simultaneously requiring KeyBank to disburse any collected funds proportionately to the non-party lenders.[7]  Perkins Rowe argues that the individual notes create individual obligations under which the non-party lenders can file separate suits against Perkins Rowe, despite KeyBank's current claim.  Perkins Rowe argues that the individual notes create the specter of multiple litigation should each non-party lender file a claim on their note.  However, this argument improperly separates the notes from their context within the full loan agreement.

Here, the Loan Agreement expressly contemplates that the loan would be parceled out to other lenders.[8]  The eight promissory notes executed in favor of the eight non-party banks merely actualize this initial risk-spreading plan.  The promissory notes represent memorializations of the non-party lenders' individual interests, but do not authorize individual actions when KeyBank pursues a default remedy with consent of the Required Lenders.  In fact, the Loan Agreement states that when the Required Lenders give consent to KeyBank's decision to pursue default remedies, as they did here, the lenders are bound by the resolution of KeyBank's claim.  This consent, therefore, effectively insulates Perkins Rowe from duplicative actions on the individual notes because of principles of res judicata.  *See, e.g., Forest Oil Corp. v. Tenneco, Inc.*, 626 F. Supp. 917, 924 n.10 (S.D. Miss. 1986) (citing Fifth Circuit precedent regarding

---

[7] *Id.* ¶¶ 25.5(a) and 25.7(c).
[8] *Id.* ¶ 25.1.

the preclusive effect of federal district court judgments on subsequent claims by non-parties with an interest in the underlying dispute) (internal citations omitted). Moreover, the non-party lenders are not signatories to the Mortgage or the Guaranty, so they cannot bring claims on these documents. Therefore, Perkins Rowe will not be subject to multiple, duplicative claims.

Perkins Rowe also argues that the Required Lenders, as defined in the Loan Agreement, [9] are the real parties in interest. However, this argument also fails because it, too, negates the nature of the full loan agreement, as contemplated in the Loan Agreement and as actualized in the subsequent assignments of the debt to the non-party lenders. When KeyBank acts as an agent, it acts both on its own accord as an interest holder, and on behalf of the other lenders "in substantially the same manner that it would act in dealing with a loan held for its own account."[10] Perkins Rowe attempts to distinguish *Oscar Gruss*, *Transcontinental Oil Corp.*, and *Chase Manhattan Bank* by highlighting language in these cases vesting sole authority in the agent to make all decisions on behalf of the non-party lenders.[11] Perkins Rowe argues that this express language of sole authority is the necessary component in the buffer to multiple claims. But here, KeyBank's authority as codified in the Appointment, Reliance,

---

[9] The Required Lenders are "[l]enders holding Percentages aggregating at least sixty-six and two thirds percent (66.67%)." *Id.* art. 2.
[10] *Id.* ¶ 25.1.
[11] *See* Reply Mem. in Supp. of Defs.' Mot. to Dismiss 5, 9-10.

Distribution and Apportionment, and Consent clauses of the Loan Agreement,[12] provides the requisite protection against subsequent multiple claims.

As in *Transcontinental Oil Corp.*, KeyBank established its leadership role in this transaction from the beginning when it negotiated the initial loan agreement, drafted the language in the amended and restated construction loan agreement, and found the other lenders. 560 F.2d at 103. Ultimately, KeyBank's agent role ensures that it is master of the litigation, and its ownership stake ensures that it is more than a mere conduit for the collection of a remedy owed to others. *Compare Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 465 (1980) (labeling control over the litigation and an actual and substantial interest in the subject matter of the litigation as defining characteristics of a real party to the controversy in the trustee context) (internal citation and quotation omitted) *with Transcontinental Oil Corp. v. Trenton Prods. Co.*, 560 F.2d 94, 103 (2d Cir. 1977) (holding that "a strategic choice of parties in order to maintain diversity is not considered to be collusive so long as the party chosen to bring the suit is in fact the master of the litigation"). *See also Wells Fargo Home Mortgage v. Celestin*, 08-691 (La. App. 5th Cir. 1/27/09), 8 So. 3d 634, 640 (affirming the right of a mortgage agreement servicing agent to sue to enforce the rights of a third party note holder).

In summary, because the Loan Agreement shows that KeyBank is an owner of the shares and master of the litigation, and because Perkins Rowe

---

[12] *Id.* at ¶¶ 25.1, 25.2, 25.5, 25.6.

produces no evidence of a collusive intent to either create or destroy diversity jurisdiction in KeyBank's actions,[13] the Court finds that KeyBank is a real party to the entire litigation and thus an appropriate party on which to base the diversity jurisdictional citizenship analysis. Because KeyBank is completely diverse from Perkins Rowe, the Court has subject matter jurisdiction over this case.

**Rule 12(b)(7)**

Federal Rule of Civil Procedure 12(b)(7) allows dismissal for "failure to join a party under Rule 19." The Rule 19 analysis under 12(b)(7) involves two steps:

> The court must first determine under Rule 19(a) whether a person should be joined to the lawsuit. If joinder is warranted, then the person will be brought into the lawsuit. But if such joinder would destroy the court's jurisdiction, then the court must determine under Rule 19(b) whether to press forward without the person or to dismiss the litigation."

*HS Resources, Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003).

Here, the Rule 19(a) analysis involves an initial determination of whether BNO is a required party. Only if BNO is required, or in traditional parlance "necessary", does the inquiry proceed to Rule 19(b).[14] *See* Fed. R. Civ. P. 19(a); *see also Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 393-94 (5th Cir. 2006). This inquiry is "highly practical" and "fact based". *Id.* at 394 (internal citation omitted).

---

[13] See 28 U.S.C. § 1359 (prohibiting federal jurisdiction where parties engage in collusive practices to invoke federal jurisdiction). *Cf. Airlines Reporting Corp. v. S and N Travel Inc.*, 58 F.3d 857, 862-63 (2d Cir. 1995) (where banks fabricated an agency relationship to manufacture diversity).

[14] Rule 19 no longer uses the terms "necessary" and "indispensable" to describe parties that should or must be joined to the litigation. *See* Fed. R. Civ. P. 19 advisory committee's note 2007 amendment. However, courts still use these terms as shorthand in the analysis. *See Picciotto v. Cont'l Cas. Co.*, 512 F.3d 9, 16 n.10 (1st Cir. 2008).

Perkins Rowe argues that non-diverse Bank of New Orleans ("BNO"), holder of a $1 million note on the $170 million debt, is a required party and thus should be joined to the litigation. To determine whether BNO is a required party, the Court must first determine whether "complete relief among existing parties" can be provided without BNO's presence in the litigation. *See* Fed. R. Civ. P. 19(a)(1)(A). The Court must then determine whether BNO's absence will impede or impair BNO's ability to protect their interests. *See* Fed. R. Civ. P. 19(a)(1)(B)(i). Finally, the Court must determine whether not joining BNO might subject Perkins Rowe to a substantial risk of incurring "multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii).

First, regarding complete relief, Perkins Rowe argues that complete relief is not possible without BNO because KeyBank is only a party to one note and, consequently, has no individual rights arising out of the other notes.[15] Perkins Rowe further contends that section 25.8 of the Loan Agreement retains BNO's right to sue on its note, thus precluding complete relief in BNO's absence. KeyBank counters with essentially the same argument underlying the real party in interest discussion above, that the loan documents in totality establish an agency relationship that upon consent of the Required Lender group vests in KeyBank the complete authority to pursue default remedies against Perkins Rowe. KeyBank argues that this authority, coupled with the principles of res

---

[15] Mem. in Supp. of Defs.' Mot. to Dismiss 11-12.

judicata, precludes multiple claims.  The Court agrees with KeyBank.  The Loan Documents anticipate KeyBank's assignments to the other lenders. [16]  Moreover, KeyBank is required to pursue all default remedies on behalf of the other lenders as if it were the holder of all the loans.[17]  Furthermore, KeyBank must proportionally distribute any funds received to the other lenders.[18]  Therefore, the interests of the non-party lenders are adequately represented, and the totality of the Loan Documents satisfies Rule 19(a)(1)(A)'s requirement that complete relief among existing parties be possible without BNO.

     The Court now turns to the second prong of the Rule 19(a) analysis, whether BNO's absence would, as a practical matter, impair its ability to protect its interests, or whether in BNO's absence Perkins Rowe might be subject to duplicative litigation.  Fed. R. Civ. P. 19(a)(1)(B).  Regarding impairment of BNO's interests, Perkins Rowe does not rebut KeyBank's argument that the Appointment, Reliance, Distribution and Apportionment, and Consent clauses of the Loan Agreement adequately protect BNO's rights by placing duties on KeyBank that ensure that any default remedies pursued under the agency agreement will transfer to the non-party lenders.  Furthermore, the Loan Agreement protects the non-party lenders, including BNO, by providing a contract remedy against KeyBank if it fails to meet its obligations to the non-party

---

[16] Loan Agreement ¶ 25.1.
[17] *Id.* ¶ 25.2.
[18] *Id.* ¶ 25.5.

lenders under the terms of the Loan Agreement.  Therefore, BNO's absence from the current litigation will not impair its interests.

Finally, Perkins Rowe's argument that it will be subject to multiple or otherwise inconsistent obligations in BNO's absence is unavailing.  Perkins Rowe raises the specter of multiple, successive suits from the non-party lenders based on section 25.8 of the Loan Agreement.[19]  However, as discussed above, the non-party lenders, all of whom authorized KeyBank's actions, will be bound by a judgment in this matter.  Thus, principles of res judicata effectively insulate Perkins Rowe from risk of exposure to duplicative litigation.

In summary, because in BNO's absence complete relief among the parties is still possible, BNO's ability to protect its interests is not prejudiced, and Perkins Rowe does not face multiple claims by the non-party lenders, the Court finds that BNO is not a required party under Rule 19.  Because BNO is not a required party, further analysis under Rule 19 is unnecessary.

---

[19] Section 25.8, "Lender Actions Against Borrower or the Collateral," states:
> Each Lender agrees that it will not take any action, nor institute any actions or proceedings, against Borrower or any other person hereunder or under any other Loan Documents with respect to exercising claims against Borrower or rights in any collateral without the consent of the Required Lenders.

## **Conclusion**

KeyBank has presented sufficient evidence to establish that it is a real party to the controversy for diversity jurisdictional purposes. Moreover, because BNO is not a required party under Rule 19, complete diversity among the named parties remains intact. Therefore, for the reasons stated herein, Perkins Rowe's Motion to Dismiss (doc. 38) is DENIED.

Signed in Baton Rouge, Louisiana, on November 20, 2009.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**