UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

KEYBANK NATIONAL ASSOCIATION

VERSUS

PERKINS ROWE ASSOCIATES, LLC, ET AL.

CIVIL ACTION

NO. 09-497-JJB-SCR

**RULING ON PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**

This matter is before the Court on plaintiff's, KeyBank National Association ("KeyBank"), renewed motion to dismiss defendants' counterclaims.  (Doc. 114.) Defendants, Perkins Rowe Associates, LLC, Perkins Rowe Associates II, LLC, Perkins Rowe Block A Condominiums, LLC, and Joseph T. Spinosa (collectively "Perkins Rowe") filed an opposition.  (Doc. 134.)  KeyBank filed a reply.  (Doc. 149.)  This Court has jurisdiction pursuant to 28 U.S.C. § 1332.  After careful review of the parties' submissions, the Court DENIES IN PART and GRANTS IN PART KeyBank's motion (doc. 114) for the reasons discussed herein.

**Background**

For purposes of this motion, the relevant facts are that KeyBank entered into a $170 million loan agreement with Perkins Rowe in July 2006.  After Perkins Rowe failed to make payment on the loan, KeyBank filed suit to collect on the notes, to foreclose on the mortgage, and to enforce the guaranty.  In response, Perkins Rowe asserted several counterclaims alleging that KeyBank substantially breached the loan agreement, thus excusing Perkins Rowe's non-performance.

1

KeyBank now moves for dismissal of all counterclaims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## Law and Analysis

Rule 12(b)(6) provides for dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court should grant a motion to dismiss only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

In reviewing the complaint, courts accept all well-pleaded facts in the complaint as true. *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995). Courts do not, however, accept as true all legal conclusions. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Instead, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, a plaintiff must provide sufficient factual content for the court to reasonably infer that the plaintiff is entitled to relief based upon the context of the case and the court's "judicial experience and common sense." *Id.* at 1949-50. Generally, consideration of materials outside the pleadings is not appropriate on a motion to dismiss; however, the Court can consider the loan documents in this case because the parties reference and rely on them in their allegations regarding the counterclaims. *See Lovelace v. Software Spectrum Inc.*, 78 F.3d

2

1015, 1017-18 (5th Cir. 1996) (allowing extrinsic documents into a Rule 12(b)(6) analysis when the documents were either attached or incorporated into the complaint).

Perkins Rowe brings the following five counterclaims: 1) the Picardy Connector claim, 2) the Central Facilities claim, 3) the Block A Condominium claim, 4) the Wrongful Sequestration claim, and 5) the Loan Administration claim. As a threshold matter, the parties address two independent issues that affect consideration of the counterclaims: the June 30, 2008 release and the Louisiana Credit Agreement Statute.[1]  The release, if valid, operates as a general release of KeyBank's liability for any claims by Perkins Rowe arising on or prior to June 30, 2008.[2]  The Louisiana Credit Agreement Statute, if applicable as KeyBank argues, invalidates all Perkins Rowe's claims based on implied contractual obligations.  Determination of these two issues affects the validity of many of the above claims; therefore, the analysis begins with these issues.

The June 30, 2008 Release

KeyBank argues that the release bars any of Perkins Rowe's counterclaims that accrued on or before June 30, 2008.  Perkins Rowe counters that the release is an affirmative defense not suitable for resolution on a 12(b)(6) motion, and, alternatively, that the release is adhesionary, and that KeyBank obtained it by coercion and duress.

---

[1] La. Rev. Stat. §§ 6:1121 et seq.
[2] *See* First Amendment to Am. and Restated Construction Loan Agreement § 13 (doc. 114-5).

3

Indeed, release is an affirmative defense and thus is unsuitable for disposition on a 12(b)(6) motion because the defense does not undercut the adequacy of the claim. *Deckard v. General Motors Corp.*, 307 F.3d 556, 560 (7th Cir. 2002) (citing *Gomez v. Toledo*, 446 U.S. 635, 639-41 (1980)). A search of precedent reveals certain instances wherein trial courts have addressed releases in the context of motions to dismiss; however, each instance involves Rule 12(b)(6) motions that the Court converted to summary judgment motions to resolve matters outside the pleadings. *See* Wright & Miller, Federal Practice and Procedure: Civil 3d § 1357 n.79. Thus, to the extent that KeyBank invokes the release as a bar to liability, the Court finds determination of that issue premature. KeyBank is free to raise all arguments regarding the release in a subsequent dispositive motion.

The Louisiana Credit Agreement Statute

The Louisiana Credit Agreement Statute ("the statute") establishes writing requirements in the credit agreement context. *See* La. Rev. Stat. Ann. §§ 1121-24. Specifically, the statute prohibits debtor claims based on oral credit agreements. *Id.* at §1122. KeyBank argues that this statue insulates them from liability on Perkins Rowe's numerous claims of bad faith breach of the loan agreement because those claims allege breach of implied duties not memorialized in the loan agreement. Perkins Rowe counters that the statute does not insulate KeyBank from liability because the counterclaims are all based

on the written loan agreement.  Perkins Rowe argues that neither the loan agreement nor case law interpreting the statute supplant provisions in the Louisiana Civil Code imposing on KeyBank the standard obligations of good faith attributable to every contract.  The Court agrees with Perkins Rowe.

KeyBank's argument that generally applicable civil code contract principles do not apply to the loan documents is inapposite.  KeyBank's cited cases are all distinguishable on the facts.  Specifically, in *Peperone's Gourmet Market, Inc. v. Newtek Small Business Financial, Inc.*, each of the claims involved disputes over oral agreements to lend money or make financial accommodations.  2006 WL 851174, at *2 (E.D. La. Mar. 15, 2006).  Similarly, in *EPCO Carbondioxide Products, Inc. v. Bank One, NA et al.,* the court found that plaintiff brought claims based on implied agreements, oral negotiations, and the parties' previous relationship, not on a current agreement between the parties.  2007 WL 1347785, at *8 (W.D. La. May 8, 2007).  Finally, the court in *Henning Construction v. First Eastern Bank & Trust Co.*, rejected the notion that good faith duties attach to lender actions in connection to enforcement of a demand note. 92-0435 (La. App. 4 Cir. 3/15/94); 635 So. 2d, 273, 275.

Here, by contrast, the dispute concerns interpretation of various provisions in a written loan agreement.  The loan agreement is not a demand note, nor does it reference or pertain to prior dealings between the parties.  Rather, the loan agreement and its amendments deal expressly with development of the Perkins

Rowe property, as defined in the loan agreement.[3] Moreover, when viewed in a light most favorable to Perkins Rowe, the record does not support KeyBank's argument that Perkins Rowe attempts to impose good faith duties based on obligations that are not memorialized in the loan agreement. As discussed below, each of Perkins Rowe's counterclaims corresponds to a section of the loan agreement upon which Perkins Rowe asserts a plausible claim for recovery based on KeyBank's alleged breach of contractual obligations of good faith and timely performance.

<u>Perkins Rowe's Counterclaims under Rule 12(b)(6)</u>

Perkins Rowe argues that the facts alleged, when taken as true, establish sufficiently plausible counterclaims on the five, above-referenced issues. KeyBank argues that the counterclaims are fatally deficient because they fail to allege specific breaches of loan agreement provisions, and because Perkins Rowe did not provide adequate notice of the alleged breaches. However, upon careful reading of the parties' submissions, Perkins Rowe alleges facts that plausibly ground its counterclaims in disputes involving specific portions of the loan agreement, and Perkins Rowe also alleges enough facts to provide notice. Therefore, 12(b)(6) dismissal is not warranted.

---

[3] *See* Am. and Restated Loan Agreement 1 (doc. 114-4)

First, as addressed in a prior ruling, Perkins Rowe's Picardy Connector counterclaim rests on disputed interpretations of paragraph 10 of the first amendment to the loan agreement.[4]

Second, the Central Facilities counterclaim concerns KeyBank's withholding of loan funds in response to Perkins Rowe's refusal to provide a contract between Perkins Rowe and Central Facilities regarding chilled water. Perkins Rowe asserts that it could not reasonably be expected to produce a contract where no contract existed. Construed in Perkins Rowe's favor, this counterclaim can reasonably be viewed as a dispute over section 12.3(h) of the amended loan agreement.[5]

Third, the Block A Condominium claim centers on the parties' dispute over whether KeyBank unreasonably withheld approval and acted inconsistently with respect to prevailing market terms in accordance with paragraph 14.2 of the amended loan agreement.[6]

Fourth, the Loan Administration counterclaim alleges improper withholding of fund disbursement and improper withdrawal of loan interest payments from the project escrow account. These allegations raise plausible claims under Loan

---

[4] *See* Ruling on Pl.'s Mot. For Summ. J. 7 (doc. 156) (noting that the Picardy Connector claim centers on KeyBank's placement of additional restrictions on the Picardy release that Perkins Rowe argues violate paragraph 10).

[5] Am. and Restated Loan Agreement § 12.3(h) (doc. 114-4) (stating KeyBank's authority to demand "[s]uch other instruments, documents, and information as [KeyBank] or the Title Insurer may <u>reasonably</u> request" (emphasis added)).

[6] *See id.* at § 14.2 ("In the event [Perkins Rowe] desires to convert one or more of the rental apartment units within the Project to 'for sale' condominium units during the term of the Loan, such conversion shall be subject to the establishment of a residential condominium regime, minimum sales requirements, release prices and other terms and conditions approved by [KeyBank], which approval <u>shall not be unreasonably withheld</u> so long as the same are <u>consistent with prevailing market terms</u>." (emphasis added)).

Agreement section 12.3 and First Amendment to the initial agreement paragraph 6.[7]  Additionally, the Court previously found that Perkins Rowe alleged various instances wherein it provided notice to KeyBank of the above alleged breaches.[8] Thus, taken as true, these alleged instances of notice coupled with the corresponding loan agreement provisions sufficiently allow Perkins Rowe's Picardy Connector, Central Facilities, Block A Condominium, and Loan Administration counterclaims to survive a motion to dismiss.

Finally, in its Wrongful Sequestration counterclaim, Perkins Rowe alleges that sequestration of the Perkins Rowe property was inappropriate and overreaching and that the keeper has engaged in imprudent administration of the property post-sequestration.  KeyBank counters that Perkins Rowe's counterclaim fails as a matter of law because KeyBank had statutory and contractual authority to sequester the Perkins Rowe property.  KeyBank also argues that any claim for imprudent administration by the keeper is invalid as it pertains to KeyBank.  For the following reasons, the Court finds that the Wrongful Sequestration counterclaim survives this motion to dismiss; however, Perkins Rowe's imprudent administrator allegations are incompatible with the counterclaim, and thus must be dismissed without prejudice.

The Louisiana Code of Civil Procedure authorizes a mortgagee to move for sequestration if the defendant has the power "to conceal, dispose of, or waste

---

[7] *See* Ruling on Pl.'s Mot. For Summ. J. 8 (doc. 156) (discussing the parties' dispute concerning conditions for disbursing funds and for interest payment on the loan).
[8] *See id.* at 8-9.

8

the property or the revenues therefrom." La. Code Civ. Proc. Ann. art. 3571. The Court granted KeyBank's ex parte motion for a writ of sequestration over the Perkins Rowe property on July 29, 2009.[9]

The Louisiana Code of Civil Procedure also allows the mortgagor to seek damages for the wrongful issuance of a writ of sequestration by asserting a reconventional demand, or counterclaim, against the party who sought the writ. La. Code Civ. Proc. Ann. art. 3506. Perkins Rowe argues that proper grounds for sequestration, namely an ability to conceal, dispose of, or waste the property, did not exist because the sequestered property is immovable and KeyBank has the authority to collect rents. KeyBank disputes this allegation and argues that the Perkins Rowe defendants, as managers of the Perkins Rowe property, had the power to waste the property in other ways.[10] Taking all allegations as true, and viewing them in a light most favorable to Perkins Rowe, the Wrongful Sequestration counterclaim states facts giving rise to a plausible counterclaim under article 3506. Therefore, dismissal of the entire counterclaim under 12(b)(6) is not warranted.

Although the Wrongful Sequestration counterclaim survives this motion to dismiss, the Court finds improper Perkins Rowe's attempts to insert imprudent administrator claims against the keeper into this counterclaim. Perkins Rowe argues that both KeyBank and the keeper are liable under an imprudent

---

[9] *See* Order (doc. 7).
[10] *See* Pl.s' Mem. in Supp. of Renewed Mot. to Dismiss Defs.' Countercl. 22 n.16 (doc. 114-1).

9

administrator theory by analogizing to *negotiorum gestio* doctrine. But Perkins Rowe cites no authority for this proposition, and the Court found no cases applying *negotiorum gestio* in the keeper context. *Cf. SMP Sales Mgmt., Inc. v. Fleet Credit Corp.*, 1991 WL 349564, at *4 (W.D. La. July 30, 1991) (noting the court's inability to identify any case in which alleged improper administration by a court appointed keeper resulted in liability under *negotiorum gestio*). Moreover, Louisiana law provides Perkins Rowe with the appropriate recourse if it believes that the keeper is acting beyond his authority. *See* La. Rev. Stat. Ann. § 9:5140 (providing that the mortgagor may apply to the court for instructions as to the keeper's proper course of action. The court may then issue necessary orders to the keeper to protect the parties' interests). Thus, Perkins Rowe should reurge its imprudent administrator claims under section 9:5140, and the Court dismisses without prejudice Perkins Rowe's imprudent administrator claims to the extent they implicate KeyBank in the context of the Wrongful Sequestration counterclaim.

## **Conclusion**

Because Perkins Rowe alleges facts giving rise to plausible counterclaims on the Picardy Connector, Central Facilities, Block A Condominium, Loan Administration, and Wrongful Sequestration issues, KeyBank's motion to dismiss (doc. 114) is DENIED IN PART. To the extent Perkins Rowe brings imprudent administrator claims against KeyBank for the keeper's actions, the motion to

dismiss is GRANTED IN PART.  Furthermore, because the June 30, 2008 release functions as an affirmative defense and thus is unsuitable for disposition on a 12(b)(6) motion, KeyBank is free to raise all arguments regarding the release in a subsequent dispositive motion.

Signed in Baton Rouge, Louisiana, on June 16, 2010.

                                                    _____
                                                    **JUDGE JAMES J. BRADY**
                                                    **UNITED STATES DISTRICT COURT**
                                                    **MIDDLE DISTRICT OF LOUISIANA**