UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

KEYBANK NATIONAL ASSOCIATION

VERSUS

PERKINS ROWE ASSOCIATES, L.L.C., ET AL.

CIVIL ACTION

NO. 09-497-JJB-SCR

**RULING ON MOTION TO DISMISS**

This matter is before the Court on a motion to dismiss (doc. 152) filed by Defendant, Central Facilities, L.L.C. ("Central Facilities"),[1] under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff, KeyBank National Association ("KeyBank"), filed an opposition (doc. 157), and Central Facilities filed a reply (doc. 164). Jurisdiction is proper under 28 U.S.C. § 1332. There is no need for oral argument. For the following reasons, the Court DENIES Central Facilities' motion.

**BACKGROUND**

The circumstances giving rise to the underlying suit are discussed at length in the Court's November 20, 2009, ruling on Perkins Rowe's motion to dismiss.[2] In May 2010, this Court granted leave for KeyBank to amend its complaint to add Central Facilities as a defendant. Here, KeyBank alleges that

---

[1] Central Facilities claims in a footnote that Keybank has brought suit against the wrong party because a separate entity, Central Facilities Operating Company, L.L.C. (the "Operating Company"), is responsible for providing the chilled water to the Perkins Rowe Project. (Doc. 152, p. 2). KeyBank subsequently denies this claim in a footnote of its own and alternatively asks for leave to amend to add the Operating Company. (Doc. 157, p. 5-6). This issue is not appropriate for a 12(b)(6) motion and should be raised appropriately in a separate dispositive motion. Generally, however, courts liberally grant motions to amend in such instances.

[2] Ruling on Defs.' Mot. to Dismiss 1-3 (doc. 53).

1

Central Facilities has an obligation to provide chilled water to the project and that Defendant Joseph T. Spinosa as an alter ego of Central Facilities also has an obligation to provide chilled water. KeyBank argues the obligation arises from a series of declarations relating to the property, including: the second amended and restated master declaration of covenants, servitudes, and restrictions for Perkins Rowe; the declaration of condominium creating and establishing Perkins Rowe building "A" retail and residential condominium, and the declaration of condominium creating and establishing the Lofts at Perkins Rowe (collectively, "the declarations"). KeyBank alleges that Central Facilities entered into a contract under the Louisiana Civil Code principle of promesse de porte-fort and that Spinosa is also liable as the alter ego of Central Facilities. In its amended complaint, KeyBank seeks specific performance against Spinosa, ordering him to cause Central Facilities to enter into a written contract to provide chilled water under Spinosa's obligation in the performance guaranty. Central Facilities claims KeyBank fails to state a claim under Rule 12(b)(6) because the language of the loan agreement provision is too vague and because KeyBank misapplies the promesse de porte-fort theory under Louisiana law.

## LAW AND ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "sufficient factual matter, taken as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating the

sufficiency of a claim under Rule 12(b)(6), the well-pleaded facts in the plaintiff's complaint are accepted as true and the allegations are construed in the light most favorable to the plaintiff. *Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2008). Generally, consideration of materials outside the pleadings is not appropriate on a motion to dismiss; however, the Court can consider the declarations in this case because the parties reference and rely on the declarations in their pleadings. *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996) (allowing extrinsic documents into a Rule 12(b)(6) analysis when the documents were either attached or incorporated into the complaint). A claim has facial plausibility when the facts alleged "[allow] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1940.

Whether the Loan Agreement Language Sufficiently Supports Inference of a Contract

KeyBank seeks a declaratory judgment that section 2.8 of the master declaration creates a contract obliging Central Facilities and Spinosa to provide chilled water to the project. The provision in question reads:

> The Declarants [Perkins Rowe Associates L.L.C., et al] reserve the right and an exclusive servitude over Perkins Rowe to provide chilled water to the improvements in Perkins Rowe and to construct, repair, replace, and maintain lines, pipes, meters, boxes and other systems necessary or required to provide such chilled water. Declarants may contract with one or more third parties to provide this service. As of the Effective Date, a privately held company, which is currently an affiliate of Declarants, or its successor will provide chilled water to the improvements in Perkins Rowe at commercially reasonable rates.

3

Central Facilities argues that the provision in question fails to create a contract under Louisiana law because of two deficiencies: (1) it fails to set a fixed price and (2) it is merely an agreement to agree.

To be enforceable under Louisiana law, a contract must show 1) capacity; 2) consent; 3) cause; and 4) a lawful object.  LA. CIV. CODE ANN. art. 1918 *et seq.*, 1927, 1966, and 1971 *et seq.*  First, Central Facilities argues that there is no contract because there was no meeting of the minds as to price.  KeyBank counters that the Louisiana Civil Code provides specifically for contracts of sale of "movable goods" which fail to include an explicit price and states that the price in such contracts is "a reasonable price at the time and place of delivery."  LA. CIV. CODE. ANN. art. 2466.

Both parties cite *Benglis Sash & Door Co. v. Leonards*, 387 So. 2d 1171 (La. 1980).  KeyBank's interpretation of that case is persuasive.  In *Benglis Sash & Door Co.*, the court explicitly found that "consent to buy and sell a thing for a reasonable price" is sufficient to perfect a contract of sale.  *See id.* at 1172-73. Similarly, here, the facts as alleged plausibly support article 2466's applicability because chilled water could be a movable good as defined in the Louisiana Civil Code.[3]  Therefore, taking all inferences in KeyBank's favor, section 2.8's lack of a specific price or detailed price mechanism is not a fatal flaw in KeyBank's complaint because the parties consented to "commercially reasonable rates."

---

[3] This ruling does not establish findings that Article 2466 governs or that chilled water is a "movable good" as defined in the civil code and existing jurisprudence.

4

Second, Central Facilities argues that the language of the provision creates nothing more than an unenforceable agreement to agree and points to the phrase "[a]s of the Effective Date" as proof the Borrowers and KeyBank intended to later enter into a contract. KeyBank counters that Louisiana Civil Code article 1927 allows offer and acceptance to occur through "action or inaction that under the circumstances is clearly indicative of consent." Thus, Central Facilities' continual delivery of chilled water to date plausibly supports the inference of consent, and, therefore, a contract. *Cf. Bolen v. Dengel*, 340 F.3d 300, 313-14 (5th Cir. 2003) (finding bank's decision to schedule a closing date insufficient to infer contract when no other actions taken).

Central Facilities also argues that the chilled water provision is nothing more than an agreement to agree because it lacks a specific duration and, therefore, Central Facilities can terminate the supply at any time with reasonable notice. However, KeyBank plausibly argues that the chilled water facility was envisioned, designed, and built to provide water "throughout [Perkins Rowe's] existence."[4] The master declaration states that all provisions are to be interpreted to "creat[e] a consistent plan for the development and operation of Perkins Rowe." Furthermore, the magistrate judge found Central Facilities' claim that it can terminate the supply at will contrary to the goal of creating a consistent plan for development and operation of Perkins Rowe.[5] Thus, the Court finds

---

[4] KeyBank Nat'l Assoc.'s Resp. in Opp'n to Cent. Facilities, L.L.C.'s Mot. to Dismiss 12 (doc. 157).
[5] Ruling on Mot. for Leave to Am. Verified Compl. 5 (doc. 106) (allowing KeyBank to add Central Facilities after analyzing allegations through same standard as 12(b)(6) motion)

section 2.8 could plausibly be interpreted as establishing an intent to provide chilled water for the life of Perkins Rowe.

Whether Central Facilities Consented to a Promesse de Porte-Fort

KeyBank argues that Central Facilities is obligated to provide chilled water under the Louisiana theory of promesse de porte-fort.  A promesse de porte-fort is a contractual arrangement in which two parties enter into an agreement that a third party will perform an obligation. Until the third party "substitutes himself" into the original contracting party's shoes by either "bind[ing] himelf or . . . perform[ing]," the original contracting party is liable for any damages.  LA. CIV. CODE ANN. art. 1977.  Moreover, official comment (b) to article 1977 reads in part, "as long as the third person does not bind himself, the promisor remains the sole obligor."  *Id.*

Central Facilities argues it never signed any declarations or documents or otherwise bound itself to perform, and concludes KeyBank's only claim is against the original contracting party (the Borrowers), not the third party (Central Facilities).  Yet, the plain text of the civil code indicates performance alone can be enough to release the original contracting party from liability and substitute the third party into that role.  *Id.* ("[A]s soon as the third person binds himself the promisor is released.")  Consequently, when Central Facilities began providing chilled water to Perkins Rowe, under the promesse de porte-fort theory, Central Facilities may plausibly have bound itself to KeyBank because its performance released the Borrowers and substituted Central Facilities into their position.

6

Finally, Central Facilities argues that KeyBank fails to state a claim for specific performance against Spinosa under the alter ego doctrine. The alter ego doctrine exists so that plaintiffs can "pierce the corporate veil" of a corporation in allegations of wrongdoing. *Scott v. Am. Tobacco Co., Inc.*, No. 2004-2095, p. 8 (La. App. 4 Cir. 2/7/07); 949 So. 2d 1266, 1274-75. Five non-inclusive factors determine whether to pierce the corporate veil: (1) commingling of corporate and shareholder funds; (2) failure to follow statutory formalities for incorporating and transacting corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and (5) failure to hold regular shareholder and director meetings. *Id.* at 1274-75. Although Louisiana law most often pierces the corporate veil in instances of fraud or deceit, the determination of whether to pierce the corporate veil is a totality test. *Riggins v. Dixie Shoring Co.*, 590 So. 2d 1164, 1168-69 (La. 1991).

Here, KeyBank alleges Spinosa is the only officer and registered agent of Central Facilities and that Central Facilities provided chilled water without a written contract and without the requirement of regular payment. Taken as true, this allegation leads to the plausible inference that Spinosa and Central Facilities disregarded corporate formalities and commingled funds to the point that Central Facilities is the alter ego of Spinosa. *See Morreale v. Morreale*, 09-42, p. 8-9 (La. App. 5 Cir. 5/26/09); 10 So. 3d 1281, 1285-86. Therefore, KeyBank alleges two of the five non-inclusive factors listed in *Scott* and Spinosa could plausibly be considered the alter ego of Central Facilities. *See* 949 So. 2d at 1274-75.

Consequently, Spinosa could have the authority to cause Central Facilities to enter into a written agreement. Therefore, this motion to dismiss should be denied.

## CONCLUSION

Because KeyBank states plausible claims of an implied contract and a promesse de porte-fort, the motion by Central Facilities to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is hereby **DENIED**.

Signed in Baton Rouge, Louisiana, on July 19, 2010.

**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**