UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

KEYBANK NATIONAL ASSOCIATION

VERSUS

PERKINS ROWE ASSOCIATES, INC.,
ET AL

CIVIL ACTION

NO. 09-497-JJB-SR

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S AFFIRMATIVE DEFENSE OF FRAUD**

This matter is before the Court on Defendant's Motion (doc. 272) for Summary Judgment on Plaintiff's Affirmative Defense of Fraud. Plaintiff has filed an opposition (doc. 307) to which Defendants have filed a reply (doc. 336). There is no need for oral argument. This Court's jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated herein, Defendants' motion is DENIED.

**Background**

**I. Facts**

This case arises out of a failed construction project in Baton Rouge, Louisiana. The following facts are undisputed. On July 21, 2006, Plaintiff KeyBank National Association ("KeyBank") contracted with Perkins Rowe Associates, LLC, Perkins Rowe Associates II, LLC and Perkins Rowe Block A Condominiums, LLC (collectively, the "Borrower") to fund the construction of the a massive mixed-residential-and-commercial development ("the Project"). On June 7, 2006, Borrower and MBD Construction Company, Inc. ("MBD") entered

1

into three separate contracts—one totaling $2,671,443 (doc. 307, ex. A) for the construction of Building M and two totaling $5,307,565 (*Id.*, ex. B) (the "Second Contract") and $2,000,000 (*Id.*, ex. C) (the "Third Contract") for the construction of Building N (*Id.*, ex. 1, ¶¶ 5-6). However, Keybank alleges that Borrower, through Defendant Joseph T. Spinosa ("Spinosa"), failed to provide the Third Contract to Plaintiff, intentionally understating the cost of the project in order to obtain a loan from Plaintiff (*Id.*, ¶¶ 5-7, 9-10). Moreover, during discovery, MBD produced a copy of the Second Contract which contained the following reference to the Third Contract: "Note: The construction of the property has been broken into two contracts" (*Id.*, ¶ 9; ex. E). However, when MBD initially provided the Second Contract, this reference to the Third Contract was absent (*Id.*, ex. F). In addition, the Third Contract was not referenced in the various budgets for the Project (*Id.*, ex. 1, ¶ 8-11; exs. K-N).

However, Plaintiff received emails which referenced the Third Contract on two separate occasions. On June 14, 2006, two Keybank employees were forwarded an email which stated that the "contract value on 'N'" would increase to $7,307,565 due to the inclusion of a retaining wall in the contract (doc. 336, ex. A-1, p. 3). However, the information was not in the primary email, but was embedded within a longer chain of emails (*Id.*). In addition, on May 2, 2008, KeyBank employees received an email from KeyBank's counsel attaching a document received from Spinosa's counsel which stated that "MBD entered into three separate contracts with [Borrower]" (doc. 217-1, at KB-0135006).

## II. Procedural History

On July 28, 2009, KeyBank filed suit against Defendants to collect the funds due under the relevant promissory notes and to foreclose on the Perkins Rowe mortgage (doc. 1). On March 25, 2010, Defendants filed a counterclaim (doc. 108) against Plaintiff alleging that Plaintiff breached numerous provisions of the parties' relevant contracts. On June 30, 2010, Plaintiff filed its answer (doc. 165) in which it asserted numerous defenses to the counterclaim, including fraud. However, on November 30, 2010, this Court found that Plaintiff had failed to state a claim for fraud with sufficient particularity (doc. 252), and in response, Plaintiff filed an amended answer to the counterclaim on December 10, 2010 (doc. 261).

In its amended answer to the counterclaim, Plaintiff asserts that Defendants engaged in the following allegedly fraudulent conduct: (1) Defendants knowingly and intentionally understated the cost of the Project by withholding or doctoring relevant contracts and budgets in order to obtain a loan from Plaintiff; (2) Defendants submitted draw requests stating that the requested funds would be paid to one party, but actually paid the funds to other parties, including various entities owned and/or operated by Spinosa; and (3) Defendants failed to submit requests for payment by the initial general contractor, EMJ Corporation ("EMJ") and, after terminating EMJ, submitted the requests but paid the funds to Echelon Corporation ("Echelon") which is owned by Spinosa (doc. 261).

On December 27, 2010, Defendants filed their motion (doc. 272) to dismiss Plaintiff's fraud defense which the Court subsequently converted (doc. 298) into a motion for summary judgment due to the Defendants' presentation of matters outside the pleadings. Defendants allege that (1) Plaintiff knew of all the relevant contracts prior to filing suit, and even if it did not, Plaintiff suggested that it was not concerned about the contracts and took no action in reliance on their existence; (2) Plaintiff failed to identify which payments were wrongful and to whom the payments went, and even if some payments were made to individuals not listed in the draw requests, Plaintiff suffered no injury as a result; (3) Plaintiff falsely stated that funds were diverted from EMJ to Echelon.

On March 1, 2011, Plaintiff filed its opposition (doc. 307). Plaintiff alleges that there are numerous disputed facts relating to whether (1) Defendants intentionally understated the cost of the project by withholding or doctoring contracts and budgets; (2) Defendants diverted funds to parties other than those listed in the draw requests; and (3) Defendants paid Echelon rather than EMJ.

## Standard of Review

A motion for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). If the issue is one on which the nonmovant will bear the burden of proof at trial, the moving party satisfies its burden by pointing out that there is insufficient proof

4

concerning an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In such situations, to survive a motion for summary judgment, the nonmovant must "present evidence from which a jury might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). In evaluating the sufficiency of the evidence, the court must consider the evidence in the light most favorable to the nonmovant. *Trill Entm't, LLC v. BCD Music Grp., Inc.*, 2008 U.S. Dis. Lexis 45187, at *2-3 (M.D. La. June 9, 2008). However, conclusory or unsubstantiated allegations are insufficient for the nonmovant to demonstrate that there are genuine issues of material fact. *Id.* Moreover, when a party's state of mind is an essential element of the nonmovant's claim, courts will grant summary judgment only when the nonmovant relies solely on conclusory or unsubstantiated allegations. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264 (5th Cir. 1991).

## **Discussion**

Plaintiff asserts that Defendants withheld the Third Contract and doctored the Second Contract—by removing a reference to the Third Contract's existence—in an effort to understate the cost of the Project in order to secure a loan from Plaintiff (doc. 307). In addition, Plaintiff asserts that Borrower submitted budgets which omitted any reference to the Third Contract (doc. 307).

Defendants assert that Plaintiff knew of the Third Contract's existence both prior to and after entering the loan agreement with Defendants because Plaintiff received emails on June 14, 2006 and May 2, 2008 which referred to the Third

5

Contract (doc. 336). In addition, Defendants assert Plaintiff's employees are responsible for the omission of the Third Contract in the budgets because those employees initially entered the figures into the budget, which was then carried over by all parties (doc. 336). Defendants also assert that Plaintiff did not include the additional $2 million for the project because the parties understood that this $2 million was to be paid for out of Defendants' equity in the Project (doc. 336).

Under Louisiana law, fraud acts an affirmative defense to a breach of contract action by vitiating the defendant's consent to the contract. *See* La. Civ. Code art. 1948. Under Louisiana Civil Code article 1953, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other" and "may result from silence or inaction." The United States Court of Appeals for the Fifth Circuit has also required that the party claiming fraud justifiably rely on the misrepresentation or suppression of the truth. *Foley & Lardner v. Aldar Invs.*, 491 F. Supp. 2d 595, 604 (M.D. La. 2007). That said, "[f]raud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill." La. Civ. Code. art. 1954.

The Court finds that there are genuine issues of material fact as to Defendant's withholding or doctoring the Third Contract. As a threshold matter, because fraud acts as an affirmative defense to a breach of contract action by vitiating the defendant's consent to the contract, the court need not consider

representations made after July 21, 2006—the date the parties entered the loan agreement. See La. Civ. Code art. 1948. The evidence suggests that Defendants failed to provide the Third Contract prior to entering the loan agreement (doc. 307, ex. 1, ¶¶ 5-7, 9-10). Moreover, the evidence suggests that Defendants doctored the Second Contract either to insert a reference to the Third Contract after it was provided to Plaintiff, or to remove the reference to the Third Contract prior to providing it to Plaintiff (*Id.*, exs. E & F). However, the evidence also suggests that Plaintiff could have learned of the Third Contract on June 14, 2006, when two Keybank employees were forwarded an email which contained a reference to the Third Contract. (doc. 336, ex. A-1, p. 3). To complicate matters more, the reference was not in the primary email, but was embedded within a longer chain of emails (*Id.*). Therefore, questions of fact exist as to whether Defendants suppressed the truth, whether they did so intentionally, whether Plaintiff would have refused to fund the project had it known of the Third Contract, and whether Plaintiff could have discovered the Third Contract's existence without difficulty.

The Court also finds there are genuine issues of material fact as to various the budgets for the Project. The evidence suggests that the Third Contract was not shown in budgets for the Project (doc. 307, ex. 1, ¶ 8-11; exs. K-N). However, Defendant asserts that its absence is due to the fact that the Third Contract was to be funded by Defendants' equity in the Project, and therefore was not relevant to Plaintiff in deciding whether to loan Defendants the funds for

the Project (doc. 336). As such, Defendants assert that Plaintiffs employees purposefully omitted references to the Third Contract from the Budget (doc. 336). In addition, Defendants assert that Plaintiff's employees' failure to include references to the Third Contract was simply and unwittingly carried forward by all parties in subsequent budgets (doc. 336). However, Plaintiff asserts that the cost of the project—and not the source of the funds—was of primary importance and that the parties never agreed that Defendants would not inform Plaintiff of contracts which Defendants planned to pay for out of their equity (doc. 307). In addition, that Plaintiffs omitted the Third Contract from the budget does not imply that Plaintiff's employees mismanaged the budget—as Defendants suggest (doc. 336)—anymore than it suggests that they were simply ignorant to the Third Contract's existence. As such, myriad issues of material fact exist as to why references to the Third Contract were omitted from the budget.

## CONCLUSION

Accordingly, the Court hereby DENIES Defendants' Motion (doc. 272) for Summary Judgment as to Plaintiff's affirmative defense of fraud.

Signed in Baton Rouge, Louisiana this 14th day of April, 2010.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**