UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

KEYBANK NATIONAL ASSOCIATION

VERSUS

PERKINS ROWE ASSOCIATES, LLC, ET AL.

CIVIL ACTION

NO. 09-497-JJB-SCR

## RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON ITS RIGHT TO FORECLOSE AND TO ENFORCE THE PAYMENT GUARANTY

This matter is before the Court on Plaintiff's Motion (doc. 371) for Summary Judgment on Its Right to Foreclose and to Enforce the Payment Guaranty. Defendants have filed an opposition (doc. 379) to which Plaintiff has filed a reply (doc. 391). This Court jurisdiction exists pursuant to 28 U.S.C. § 1332. For the reasons stated herein, the Court GRANTS Plaintiff's motion.

## Background

### I. Facts

In July 2006, Plaintiff Keybank National Association ("Keybank") entered a loan agreement wherein it agreed to loan Defendants[1] (collectively "Perkins Rowe") $170 million for the construction of a massive mixed-residential-commercial development (doc. 2, ex. O). In addition to the loan agreement, Perkins Rowe signed a mortgage and a promissory note in KeyBank's favor for the full loan amount (doc. 93, ex. D). Moreover, Defendant Spinosa executed an

---

[1] Defendants are Perkins Rowe Associates, LLC, Perkins Rowe Associates II, LLC, Perkins Rowe Block A Condominiums, LLC, and Joseph T. Spinosa (collectively "Perkins Rowe").

individual guaranty of payment on the loan (doc. 93, ex. J). Keybank then executed assignments secured by promissory notes signed by Spinosa to eight other lenders for the full value of the loan (doc. 93, ex. M). On June 30, 2008, in order to address budget shortfalls, the parties executed an amendment to the construction loan agreement (doc. 93, ex. E). The amendment altered the terms of the loan and permitted Perkins Rowe to convert some of the developments apartments into condominiums. After Perkins Rowe failed to make payment on the loan, Keybank filed suit to collect on the notes, to foreclose on the mortgage, and to enforce the guaranty.

Thereafter, on July 29, 2009, this Court entered a sequestration order and appointed a keeper, Jones Lang LeSalle ("the Keeper") to manage the property and collect all rents and revenues during the pendency of the action. Between August 2009 and March 2010, the property had a positive cash flow of $888,791. Instead of applying this revenue to pay down Defendants' debt, the Keeper paid its own expenses in connection with the management of the property.

## II. Procedural History

On March 15, 2010, Plaintiff moved for summary judgment to foreclose and enforce the guaranty (doc. 91). And on May 26, 2010, this Court denied (doc. 156) Plaintiff's motion. In doing so, the Court found that Plaintiff had met the requirements for foreclosure and enforcement of the guaranty, but also that

Defendants had asserted affirmative defenses which created genuine issues of material fact precluding a grant of summary judgment.

Thereafter, Defendants engaged in a pattern of refusing to cooperate with discovery and in the process, lost a number of discovery motions and were sanctioned multiple times for discovery misconduct. On June 7, 2011, this Court granted (doc. 366) Plaintiff's motion for contempt for refusing to comply with an order compelling discovery. In its ruling, the Court dismissed Defendants' affirmative defenses and counterclaims and made clear that "Defendants will not be able to defend their conduct or assert counterclaims against Plaintiff[] based on Plaintiff's alleged breaches of contract."

On June 22, 2011, Plaintiff again moved for summary judgment (doc. 371) to foreclose on the property and enforce the guaranty. Plaintiff asserts that because Defendants' defenses and counterclaims have been dismissed, there is no longer a dispute as to whether it is entitled to foreclosure and enforcement of the guaranty.

On August 17, 2011, Defendants filed their opposition (doc. 379). Defendants assert that Plaintiff's motion should be denied for the following reasons: (1) genuine issues of material fact remain as to the amount owed; (2) genuine issues of material fact remain as to whether Spinosa was under duress when he signed the first amendment to the loan agreement; and (3) Defendants

are entitled to additional discovery; and (4) Plaintiff's motion for summary judgment is premature.

On July 28, 2011, Plaintiff filed its reply (doc. 391). Plaintiff asserts that none of the disputed factual questions are material and that Defendants are not entitled to additional discovery.

## Summary Judgment

Summary judgment is appropriate when the pleadings, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Although the court considers any disputed or unsettled facts in the light most favorable to the plaintiff, the plaintiff must show that there is a genuine issue for trial by presenting evidence of specific facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy plaintiff's burden. *See Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996). If the movant bears the burden of persuasion on the issue at trial, the movant must conclusively establish all the essential elements of his claim. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

## Discussion

The Court begins its discussion by again noting that Plaintiff has satisfied its burden of establishing its entitlement to foreclosure and enforcement of the

guaranty. The Court's prior finding that Plaintiff was not entitled to summary judgment was limited solely to genuine issues of material fact raised by Defendants' affirmative defenses (*see* doc. 156). Because the Court has dismissed Defendants' defenses, the Court will confine its discussion to the justifications for denying summary judgment cited in Defendants' most recent motions on the issue.

## I. Amount owed

Defendants assert that summary judgment is improper because there are genuine issues of material fact with regard to the amount owed. Defendants assert that Plaintiff supported its motion for summary judgment with affidavits that were signed in March 2010 and that the parties disagree as to the interest rate that should be applied to determine the amount owed. Defendants assert the interest rate was to be lowered once they contributed $10 million in equity from sources other than net condo sales. Defendants allege that they hit the $10-million mark on October 15, 2008. However, Plaintiff's calculations were based on the higher, unchanged rate. Defendants also assert that Plaintiff and/or the Keeper improperly failed to apply positive cash flow to pay down Defendants' debt.

Plaintiff asserts that Defendants were not entitled to the reduction. According to Plaintiff, the lower rate was only to be applied if Defendants did not default on the contract, which Defendants did. In addition, Plaintiff asserts that

neither it nor the Keeper was obligated to apply positive cash flow generated by the property to Defendants' debt.

To establish its entitlement to foreclosure, a plaintiff must establish the amount owed. *Am. Sec. Bank of Ville Platte v. Deshotel*, 548 So. 2d 377, 379-80 (La. Ct. App. 3d Cir. 1989). Where there is a genuine issue of material fact as to the amount owed, summary judgment ordering a foreclosure is not appropriate. *Gulf Coast Bank & Trust Co. v. Donnaud's Inc.*, 759 So. 2d 268, 273-74 (La. Ct. App. 5th Cir. 2000). However, if a defendant disputes the amount owed on the grounds that it has made payments towards the debt, but that the plaintiff misapplied the payments, the defendant bears the burden of proving as much. *Id.* at 273.

The Court finds that there are no genuine issues of material fact. Neither party disputes the principal amount owed ($161,432,275.40), the late fees or the amount of interest at the default rate (docs. 91-3, 112-16). Both parties used a LIBOR-based rate to calculate the amount of interest owed prior to the loan-maturity date (doc. 92-1, p. 26). After that date, Plaintiffs continued to use the LIBOR-based rate. Defendants, on the other hand, applied a lower rate based on the assumption that it was entitled to do so after making certain capital contributions. However, the parties' contract states that the lower rate was to be applied only if Defendants did not default (doc. 91-7). Beginning in October

2008, Defendants defaulted by failing to make interest payments as required by the contract and failing to pay the loan balance at maturity (doc. 123-2, ¶ 12).

In addition, the Keeper of the property under the Court's sequestration order reported a positive cash flow from the property of $888,791. Instead of applying this money to reduce Defendants' debt, the Keeper used the proceeds to pay its costs in connection with its administration of the property (doc. 391, ex. 1). However, neither of the parties' relevant contracts nor the Court's keeper order requires Plaintiff or the Keeper to apply positive cash flow to Defendants' debt.[2]

The Court also finds that Plaintiff is entitled to judgment as a matter of law. The parties merely contest the applicable interest rates. However, Defendants were not entitled to the lower interest rate under the parties' contract because it defaulted on its interest payments (doc. 123-2, ¶ 12). In addition, Defendants have not established that they were entitled to have positive cash flow applied in any particular way. Instead, it appears that both Plaintiff and the Keeper were

---

[2] The parties' contract (doc. 93-2 at 19) states:

> Mortgagee shall apply any and all Rents collected by it, and any and all sums other than proceeds of a Foreclosure Sale . . . in the following manner:
> (a) First, to pay the portion of the Secured Obligations attributable to the costs and expenses of operation and collection that may be incurred by Mortgagee or any receiver;
> (b) Second, to pay all other Secured Obligations in any order and proportions as Mortgagee in its sole discretion may choose.

The Court's Keeper Order and Amended Keeper Order (docs. 124 ¶ 5; 388 ¶ 5) states that the Keeper "has full power of management and administration of the Property, including (without limitation) the authority to operate the Property . . . with authority to take all necessary steps to operate, maintain and preserve the Property."

entitled to apply revenues as they saw fit.  As such, Defendants cannot bear their burden of establishing that Plaintiff misapplied their payments.  *Gulf Coast Bank & Trust Co.*, 759 So. 2d at 273-74.

## II. Duress

Defendants assert that Plaintiff is not entitled to summary judgment because Spinosa was under economic duress when he signed the First Amendment to the Amended and Restated Construction Loan Agreement. According to Defendants, had Spinosa not signed the amendment, the project would not have been able to continue due to lack of funds.  Moreover, Defendants assert that Plaintiff forced them to waive their valid claims against lenders in order to secure the needed additional funds.

Plaintiff asserts that Defendants are barred (doc. 366) from asserting any affirmative defenses and that, even if they are not so barred, their defense fails because they were not under legal duress when Spinosa signed the amendment.

Under Louisiana law, a court may not enforce an agreement unless it meets the four requisites for the existence of a contract, including consent. *Benglis Sash & Door Co. v. Leonards*, 387 So. 2d 1171, 1172 (La. 1980). "Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation."  La. Civ. Code art. 1959.  Under Louisiana law, economic duress is sufficient to create such a reasonable fear.  *Monterrey Ctr.,*

*LLC v. Ed. Partners, Inc.*, 5 So. 3d 225, 231 (La. Ct. App. 1st Cir. 2008). However, "[t]he mere stress of business conditions . . . does not constitute economic duress if the opposing party did not engage in conduct designed to produce that stress." *Pellerin Const., Inc. v. Witco Corp.*, 169 F. Supp. 2d 568, 579 (E.D. La. 2001) (finding that the defendant did not engage in duress when plaintiff signed a contract modification in order to avoid costs and fines associated with project delays because defendant did not create the condition).[3]

The Court finds that there are no genuine issues of material fact. Spinosa executed the First Amendment to the Amended and Restated Construction Loan Agreement in order to obtain permission to convert some of the project's apartments to condominiums. Without the conversion, the project likely could not have continued. However, Plaintiff played no role in bringing about the budget shortfalls which necessitated the conversion.

The Court also finds that Plaintiff is entitled to judgment as a matter of law. Though Defendants may have felt compelled to sign the Amendment in order to keep the project economically viable, Plaintiff played no role in causing the project to go over-budget. Because Plaintiff "did not engage in conduct designed to produce [plaintiff's] economic problems," Defendants did not suffer duress

---

[3] *See, e.g., Utley-James of La., Inc. v. La. Dept. of Facility Planning & Control*, 593 So. 2d 1261, 1268 (La. Ct. App. 1st Cir. 1991); *Averette v. Indus. Concepts, Inc.*, 673 So. 2d 642, 644 (La. Ct. App. 1st 1996); *Aubert v. Entergy Corp.*, 762 So.2d 288, 291 (La. Ct. App. 5th Cir. 2000); *Hoover v. Boucvalt*, 747 So. 2d 1227, 1231 (La. Ct. App. 4th Cir. 2000).

sufficient to vitiate consent under Louisiana law. *Pellerin*, 169 F. Supp. 2d at 579.

### III. Additional Discovery

Defendants assert that they are entitled to additional discovery on the amount owed, specifically, on whether Plaintiff properly calculated the property's revenue and whether the revenue was properly applied.

Plaintiff asserts that Defendants are not entitled to additional discovery. Plaintiff asserts that Defendants have sought to extend the discovery deadline a number of times and that the Court found that Defendants had failed to demonstrate good cause for an extension each time.

The Court finds that there are no genuine issues of material fact. On December 19, 2009, the court entered a scheduling order bifurcating discovery on Plaintiff's right to foreclose and all other issues and setting a deadline for the discovery on the foreclosure issue at February 15, 2010 (docs. 72 & 366). In addition, Defendants previously moved to extend the discovery deadline on the foreclosure issue, however, the Court denied Defendants' motions finding that Defendants had not shown good cause (doc. 147).

The Court also finds that Plaintiff is entitled to judgment as a matter of law. Here, Defendants assert that additional discovery is needed to determine the amount owed and the propriety of the Keeper's management of the funds derived from the property. However, as previously stated, Defendants have not

demonstrated that there is a genuine issue of material fact as to the amount owed or the Keeper's refusal to apply revenues to Defendants debt. *See supra* Discussion § III. As such, Defendants have not shown good cause to extend the discovery deadline to permit additional discovery on the foreclosure and enforcement issues.

## IV. Prematurity

Defendants assert that Plaintiff's motion for summary judgment is premature because Plaintiff may not foreclose on the property until it has received judgment in its favor and the time for Defendants to seek a suspensive appeal has passed. Plaintiff asserts that its motion is not premature because judgment must be entered in order for Defendants to even have a right to an appeal.

Under Federal Rule of Civil Procedure 56, "unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment *at any time* until 30 days after the close of all discovery." Fed. R. Civ. P. 56 (emphasis added). And under Louisiana law, once a judgment in favor of a creditor from a debtor is entered, the creditor may proceed to execute on the judgment. *First Acadiana Bank v. Bieber*, 582 So. 2d 1293, 1295 (La. 1991).

The Court finds that there are no genuine issues of material fact. August 5, 2011.Discovery has not yet been completed in this suit, and Plaintiff has filed a motion for summary judgment.

The Court also finds that Plaintiff is entitled to judgment as a matter of law. Plaintiff filed its motion for summary judgment within the time permitted for such motions. Fed. R. Civ. P. 56. Though, Defendants cited two cases, *Zwikel v. Zwikel*, 97 So. 850, 851 (La. 1923) and *Eiermann v. Modenbach*, 5 So. 2d 335, 337 (La. 1941), suggesting that under Louisiana law, a judgment does not become executory until the time for a suspensive appeal has passed, the cases cited are inapposite. First, the cases cited involve divorce, not foreclosure, proceedings. Second, the court must necessarily enter a judgment for Defendants have any right to an appeal. Once a judgment is entered, Defendants may contest the execution thereof, but may not prevent the Court from entering a judgment altogether.

## Conclusion

Accordingly, the Court hereby GRANTS Plaintiff's Motion (doc. 371) for Summary Judgment on Its Right to Foreclose and to Enforce the Payment Guaranty. .

Signed in Baton Rouge, Louisiana, on this 8th day of August, 2011.

_____
JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA